UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SHARON R. OLSON, a married woman,<br><br>Plaintiff,<br><br>v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY, a foreign insurer,<br><br>Defendant. | Case No. C14-0786RSM<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO QUASH |

## I.   INTRODUCTION

This matter comes before the Court on Defendant's Motion for Protective Order and to Quash Portions of the Subpoena Duces Tecum Issued to Mary Reif, M.D.  Dkt. #35. Defendant seeks to quash two of the eleven subcategories of documents requested of Dr. Reif, one of its expert witnesses, at her upcoming deposition: 1) a list of written materials and documents used or relied upon by [Dr. Reif] in this matter; and 2) all financial records, including tax returns and 1099s, showing all income earned from forensic work within the last three (3) years.  *Id.*  Defendant argues that Dr. Reif has already disclosed a list of written materials and documents relied on in her expert witness report and supplement, which have been provided to Plaintiff.  Defendant also argues that the request for all "financial records" is vague, ambiguous, overly broad and unduly burdensome, and that the same information can be gathered in a less intrusive manner through her deposition testimony.  *Id.*  Plaintiff opposes the

ORDER
PAGE - 1

motion, arguing that Defendant does not have standing to object to the subpoena issued to Dr. Reif, and that Plaintiff is entitled to the documents requested in any event. Dkt. #37. For the reasons set forth herein, the Court GRANTS IN PART and DENIES IN PART Defendant's motion.

## II.   ANALYSIS

### A. Standing

As an initial matter, the Court rejects Plaintiff's argument that Defendant lacks standing to bring the instant motion. Federal courts have consistently held that a party who wishes to object to a subpoena issued to a third-party may do so by filing a motion for protective order or to quash. *See*, *e.g.*, *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005); *Anderson v. Abercrombie & Fitch Stores, Inc.*, 2007 U.S. Dist. LEXIS 47795, *5 (S.D. Cal. July 2, 2007). Moreover, at least one other District Court has found that the relationship between a litigant and its hired expert witness affords standing for the purposes of resolving discovery disputes. *Burger v. Allstate Ins. Co.*, 2009 U.S. Dist. LEXIS 47929, *3-4 (E.D. Mich. June 8, 2009). Accordingly, the Court considers the substantive arguments made through Defendant's motion.

### B. List of Written Materials Relied Upon

Defendant first objects to the subpoena to the extent that it requires Dr. Reif to "prepare" a list of document she relied upon when drafting her expert witness report and supplements thereto. Dkt. #35 at 2-3. Plaintiff concedes that "the Subpoena does not command her to prepare any such list but rather, only to produce such a list if it exists." Dkt. #37 at 5. According to Defendant, Dr. Reif has already prepared such a list in conjunction with her expert witness report. Dkt. #35 at 3. There is no argument that it would be unduly burdensome for her to produce the list again. While Defendant's counsel insists that he has

ORDER
PAGE - 2

already produced the list to Plaintiff's counsel, the subpoena has not been directed at counsel. Therefore, it is Dr. Reif's obligation to produce the documents requested, even if the documents have previously been produced by parties to the litigation. Dr. Reif is not required to "prepare" the list anew, but must provide what she has already prepared and has in her possession responsive to the subpoena. Accordingly, the Court DENIES this portion of Defendant's motion to quash.[1]

**C. Financial Records**

Defendant next objects to the subpoena to the extent it seeks all financial records, including tax returns and 1099s, showing all income earned from forensic work within the last three (3) years. The Court agrees that this portion of the subpoena is overbroad. There is no dispute that Plaintiff is entitled to information about Dr. Reif's income and the portion of such income attributable to work as an expert witness. Indeed, it is standard practice for litigants to inquire about such matters at expert witness depositions. However, the term "all financial records . . . showing all income earned from forensic work" is overbroad and unduly burdensome as it appears to require Dr. Reif to produce a wide range of documents, including any of her bank statements reflecting such income.

Likewise, the Court finds that Dr. Reif's complete tax returns are irrelevant and overbroad for the purpose requested here. *See Behler v. Hanion*, 199 F.R.D. 553, 561-62 (D. Md. 2001). In similar circumstances, the District of Maryland noted:

> For example, plaintiff seeks discovery of the total income earned by Dr. Keehn for the last five years, the amount thereof earned providing defense Rule 35 examinations, records relating to the hours spent by Dr. Keehn in this capacity, copies of his tax returns, and a listing of all insurance

---

[1] To the extent Plaintiff's counsel argues that correspondence with defense counsel is discoverable, *see* Dkt. #37 at 5, the Court also reminds Plaintiff that Federal Rule of Civil Procedure 26(b)(4)(C) protects from disclosure communication between the expert and counsel with only limited exceptions.

ORDER
PAGE - 3

companies with whom he is affiliated, as well as a listing of all cases in which he has provided expert services.  **This is overkill.**  While there may be cases in which an expert's gross income, and the specific amounts thereof earned by providing services as an expert witness, may be discoverable, this should not be ordered routinely, without a showing, absent here, why less intrusive financial information would not suffice.  Most people are sensitive about their income, and who knows the details about it.  By their very nature, expert witnesses are knowledgeable of information that is scientific, technical, or specialized, generally acquired by long, hard study and experience.  When asked to provide expert testimony, they are in a position to request compensation that matches their qualifications, which can seem shockingly high to those not familiar with the costs of modern litigation.  Moreover, in the post-*Daubert/Kumho Tire* era, and in light of the Rule 26(a)(2) disclosure requirements and the recent changes to Rules 702 and 703, counsel increasingly are more selective in who they ask to be expert witnesses, knowing that they will be subject to the utmost scrutiny.  Those who pass muster likely will be able to command fees commensurate with their skill and experience, which may, to a lay member of the jury, appear exorbitant, when in fact what was charged is the going rate.  Rule 26(a)(2)(B) requires disclosure of the compensation received by a retained expert in the particular case at issue, and counsel routinely bring this out during cross-examination when questioning an opposing expert witness.  However, permitting routine disclosure of the expert's gross compensation, from all sources – including those unrelated to litigation activities – would provide the jury with little information relevant to a fair assessment of the expert's credibility, while concomitantly introducing the real possibility of creating confusion, distraction and even prejudice.  Nor is the trial of a case facilitated if a party sponsoring an expert attempts to draw the possible sting of expert compensation by attempting to prove that what his or her expert charges is within the norm, as this opens the door for collateral issues that could further distract the jury.

Instead, the jury readily should be able to assess possible bias on the part of an expert witness if they are made aware of the total percentage of his or her gross income that is earned from providing expert witness services.  Similarly, there is no need for the expert to have to produce his or her tax returns, if the party seeking the discovery has accurate information regarding the percentage of income earned as an expert.

*Behler*, 199 F.R.D. at 561-62 (emphasis added); *see also Rogers v. United States Navy*, 223 F.R.D. 533 (S.D. Cal. 2004) (finding that estimates of the percentage of income earned from

ORDER
PAGE - 4

expert witness work was adequate for bias purposes and additional documents showing entire income earned from medical-legal practice were not necessary to disclose).

The Court finds that Plaintiff can obtain information about Dr. Reif's income and the percentage attributed to expert witness work through her testimony at deposition, without the need for her broad financial records, complete tax returns and 1099 forms.  Accordingly, the Court GRANTS this portion of Defendant's motion to quash, and Dr. Reif need not produce such documents.

### III.  CONCLUSION

Having reviewed Defendant's motion, the opposition thereto and reply in support thereof, along with the accompanying declarations and exhibits, and the remainder of the record, the Court hereby finds and ORDERS that Defendant's Motion for Protective Order and to Quash (Dkt. #35) is GRANTED IN PART AND DENIED IN PART as set forth above.

DATED this 23 day of February, 2015.

RICARDO S. MARTINEZ  
UNITED STATES DISTRICT JUDGE